UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NANCY ANNA CHATMAN,

                          Plaintiff,

                          v.

ANDREW SAUL, COMMISSIONER,

                          Defendant.

**Hon. Hugh B. Scott**

**6:18CV6352**

**CONSENT**

**Order**

Before this Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (plaintiff), 15 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 17, reassignment Order of July 9, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Nancy Chatman" or "plaintiff") filed an application for disability insurance benefits on December 3, 2014, for an alleged onset date of September 20, 2014

[R. 12]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated April 19, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act [R. 12]. The ALJ's decision became the final decision of the Commissioner on March 8, 2018, when the Appeals Council denied plaintiff's request for review [R. 1].

Plaintiff commenced this action on May 8, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12, 15), and plaintiff duly replied (Docket No. 16). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 37-year-old as of the onset date with at least a high school education (GED and associate's degree [R. 38]), last worked as a home health aide (a medium exertion job) [R. 20]. Following establishing her residual functional capacity, the ALJ found that she was unable to perform her past relevant work [R. 20]. Plaintiff claims the following impairments deemed severe by the ALJ: history of carpel tunnel syndrome; right hip issue; obesity; pseudoseizures; and post-traumatic stress disorder ("PTSD") [R. 14-15]. As for carpel tunnel syndrome, plaintiff had surgery on both left and right sides but she complains of issues with the left side [R. 14, 46]. As for her hip, plaintiff had an abnormal gait during the consultative examination [R. 14, 602], an x-ray showed moderate arthritic changes in the hip [R. 14, 605] and plaintiff demonstrated a restricted range of motion in her hip [R. 14, 603]. Plaintiff weighed 274 pounds, was 5'5" tall and thus had a body mass index of 45.6, deemed obese [R. 14, 263]. The ALJ found that her obesity exacerbates her hip issue [R. 15]. Plaintiff's pseudoseizures

manifests as staring and shaking for three to five minutes in an episode [R. 15, 362-63, 434-35].

Plaintiff also complains of crying, depressed mood, feelings of helplessness and nightmares

[R. 15, 439]. At her consultative examination, plaintiff's motor behavior was tense due to

physical pain and her attention, concentration, and memory were all impaired [R. 15, 597-98].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff claims disability due to pseudoseizures, right hip issues, right knee issues, back issues, headaches, and mental health issues [R. 18, 263, 36]. The ALJ contends that plaintiff testified that she was unable to follow instructions [R. 18] and claimed that she stayed up all night due to unbearable pain [R. 18, 41]. She claims that she cannot walk more than a block and could only stand for two minutes at a time [R. 18, 46]. The ALJ found that plaintiff's statement was not entirely consistent with the medical evidence and other evidence of record, that plaintiff failed to produce appropriate probable evidence of her symptoms [R. 19]. "In the absence of such evidence, significant weight cannot be given to subjective complaints, no matter how intensely expressed" [R. 19], SSR 96-3p, 96-4p.

Treating nurse practitioner Ellen Ingram on December 22, 2015, found that plaintiff was very limited in walking, standing, pushing, pulling, bending, and in her ability to lift or carry [R. 1096]. Ingram then noted during this examination that plaintiff had abnormal musculoskeletal and neurological systems while plaintiff's hands were normal [R. 1095-96]. The ALJ ultimately gave this opinion little weight because he found it was not supported by the record, that plaintiff pursued a "very conservative course of treatment," and a neurologist had recommended typical seizure precautions and imaging of the hip showed only "moderate issues" [R. 20].

3

Consultative examiner Dr. Carolyn Ling opined that plaintiff has moderate limitations in walking, standing, squatting, kneeling, lifting, and carrying [R. 18, 604] with plaintiff advised to avoid driving or operating machinery due to a history of seizures [R. 604 18]. While finding that plaintiff could rise from a chair without difficulty, Dr. Ling found that plaintiff had a restricted range of motion in her hips [R. 18, 603]. The ALJ found these opinions were consistent with plaintiff's x-rays of her hip [R. 18, 606] and portions of her medical record that found she should be restricted due to pseudoseizures when she does not feel well [R. 18, 355].

Psychological consultant Dr. Harding opined that plaintiff is able to understand and follow simple instructions; attend and concentrate for two-hour intervals; adequately interact with peers and supervisors (although not necessarily the public); and adapt to routine workplace changes [R. 18, B2A, B3A]. The ALJ found these opinions consistent with the records [R. 18].

The ALJ found that plaintiff had a residual functional capacity to perform sedentary work, except she could never climb ladders/ropes/scaffolds, only perform postural activities occasionally. Plaintiff requires to use cane but can carry small objects in free hand. She should not perform more than frequent fine manipulation such as repetitive hand-finger actions, fingering or feeling—with her left hand, but she retains the ability to grasp, hold, turn, raise and lower objects with either hand. Plaintiff also requires the ability to alternate between sitting and standing three times per hour for up to five minutes while remaining on task She should avoid work at unprotected heights, and she should not work in close proximity to dangerous machinery or moving mechanical parts of equipment. She is limited to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements. Her work should involve only simple, work-related decisions with few, if any, workplace changes. Plaintiff can relate to

4

and interact with coworkers to the extent necessary to carry out simple tasks, but she cannot frequently interact with coworkers to jointly perform tasks or accomplish work goals. Finally, she should have no more than incidental contact with the public. [R. 17.] The ALJ based this assessment on the opinion of consultant Dr. Ling, and gave it great weight because Dr. Ling examined plaintiff and the doctor's professional expertise. The ALJ also gave partial weight to the opinion of psychological consultant, T. Harding, Ph.D., because Dr. Harding did not examine plaintiff [R. 18, 601-04, 91-103, 104-16]. The ALJ noted that Harding's opinion was consistent with clinical findings of record [R. 18].

Again, the ALJ found that plaintiff was unable to perform past relevant work as a home health aide [R. 20]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as an addresser or a document preparer, both sedentary exertion positions [R. 21]. As a result, the ALJ held that plaintiff was not disabled [R. 22].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.     Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

II.     Treating Physician Rule, Pre-March 2017

Plaintiff's 2014 claim predates changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927

(2017), such as this one. The current version of the SSA regulations eliminates the treating physician's rule, but for applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claim filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. First, plaintiff argues that the ALJ's consistency finding of plaintiff's statements to the medical record is not supported by substantial evidence and the ALJ failed to evaluate plaintiff's subjective statements pursuant to 20 C.F.R. § 416.929

8

(Docket No. 12, Pl. Memo. at 1, 15-23). She claims that the residual functional capacity is not supported by substantial evidence (id. at 1, 23-30). As for the physical findings, plaintiff argues that the ALJ rejected the only function-by-function opinions in the record and concluded without describing how the evidence supports the residual functional capacity assessment (id. at 24-27), Ubiles v. Astrue, No. 11CV6349, 2012 U.S. Dist. LEXIS 100826, at *31 (W.D.N.Y. July 2, 2012) (Telesca, J.). Next, plaintiff contends that the ALJ fails to explain how the evidence supports plaintiff's ability to perform sedentary work requirements, with the ALJ relying on Dr. Ling's opinion that plaintiff had moderate limitations in standing, walking, squatting, and kneeling and moderate limitations in lifting without specifying how much plaintiff could lift (id. at 25; [R. 601-04]). Plaintiff also faults the ALJ for relying on Dr. Ling and nurse practitioner Ellen Ingram and their failure to address plaintiff's ability to reach, handle, finger, and feel and the ALJ's finding that plaintiff had unrestricted use of either hand, despite her carpel tunnel (Docket No. 12, Pl. Memo. at 27). The ALJ gave Ingram's findings little weight [R. 20], finding her position was unsupported by the record [R. 20].

As for her mental condition, plaintiff claims that the ALJ rejected medical opinions and credited instead the stale findings of the agency psychologist (id. at 28-30) whom the ALJ only gave partial weight because Dr. Harding did not examine the plaintiff [R. 18].

Defendant counters that substantial evidence—the medical opinion evidence and the consistency of plaintiff's statements with the evidence determining residual functional capacity—supports the residual functional capacity assessment (Docket No. 15, Def. Memo. at 18-26).

9

I.      Plaintiff's Consistency Assessment

The ALJ found that plaintiff "failed to produce appropriate, probative evidence as required by the Social Security Act, Regulations and Rulings to substantiate allegations of disabling symptoms" [R. 19]. Plaintiff did produce treating sources [R. 1095-96 (physical capability report of NP Ingram), 352, 453, 736 (pseudoseizures)], which the ALJ gave diminished weight. The ALJ fails to explain save pointing generally to the record as a whole. Mere summation of the record by the ALJ is insufficient, see Jones v. Colvin, No. 14CV6316, 2015 WL 4628972, at *6 (W.D.N.Y. Aug. 3, 2015) (Telesca, J.); Heckman v. Comm'r, No. 18CV6032, 2019 WL 1492868, at *3 (W.D.N.Y. Apr. 4, 2019) (Vilardo, J.) (Docket No. 16, Pl. Reply Memo. at 2). The ALJ needs to point to the differences or inconsistencies between the medical opinions and the record before diminishing the weight to be afforded these opinions. Defendant's post hoc citation to the record when the ALJ fails to do so cannot support the ALJ's decision (id. at 6; but cf. Docket No. 15, Def. Memo. at 21).

Plaintiff met her burden of proof. Thus, plaintiff's motion for judgment (Docket No. 12) is **granted**.

II.     Residual Functional Capacity Assessment

Given the above discussion, the ALJ's residual functional capacity assessment needs to be reconsidered. Since the physical findings were based upon rejection of plaintiff's medical opinions, and the mental functioning findings were based (in part) upon the consultative examiner's findings (see Docket No. 12, Pl. Memo. at 28), the ALJ needs to assess plaintiff's medical and mental health record.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion (Docket No. 12) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 15) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 4, 2019